FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 08, 2015

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
|  | Case No.  2:14-CV-00414-JPH |
| CHERYL ANN SIEKERMAN, |  |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. |  |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, |  |
| Defendant. |  |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana C. Madsen represents plaintiff (Siekerman). Special Assistant United States Attorney Leisa A. Wolf represents defendant (Commissioner). The parties consented to proceed before a magistrate judge. ECF No. 7. Plaintiff replied. ECF No. 16. After reviewing the administrative record and the briefs filed by the parties, the court **grants** plaintiff's motion for summary judgment, ECF No. 14.

**JURISDICTION**

Siekerman protectively applied for supplemental security income (SSI) benefits on October 15, 2011, alleging she became disabled January 1, 2004 (Tr. 47, 178-83). The claims were denied initially and on reconsideration (Tr. 109-114, 123-24, 127-28, 130-31). Administrative Law Judge (ALJ) James W. Sherry held a hearing July 24, 2013 (Tr. 45-72). The ALJ found plaintiff not disabled in his decision on August 7, 2013 (Tr. 21-32). The Appeals Council denied review November 5, 2014, making the ALJ's decision final. Siekerman filed this appeal pursuant to 42 U.S.C. §§ 405(g) on December 30, 2014. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the parties' briefs. They are only briefly summarized here and throughout this order as necessary to explain the Court's decision.

Siekerman was 36 years old at the hearing. She has a tenth grade education and has not earned a GED. She lives alone in a third floor apartment and has worked as a telemarketer. She can sit for a few minutes before back pain requires her to change positions. Walking is limited to two blocks. She can stand for ten minutes and lift ten pounds. She does not drive and uses public transportation (Tr. 48-54, 56-58). She has not used drugs since 2007 (Tr. 60).

In support of her application, Plaintiff alleged she cannot work due to anxiety, depression, depressive disorder, PTSD, antisocial personality disorder, personality disorder with borderline features, sleep disorder and degenerative disc disease (Tr. 212).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the

decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

///

**ALJ'S FINDINGS**

At step one ALJ Sherry found Siekerman did not engage in substantial gainful activity after she applied for benefits (Tr. 24). At steps two and three, he found she suffers from lumbar degenerative disc disease/lumbago; polysubstance dependence; major depressive disorder; anxiety disorder and personality disorder, impairments that are severe but do not meet or medically equal a Listed impairment (Tr. 24). The ALJ found Siekerman is able to perform a range of medium work (Tr. 25). At step four, relying on a vocational expert's testimony, he found Siekerman is unable to perform past relevant work (Tr. 31). At step five, the ALJ found plaintiff can perform other work such as hand packager, housekeeper, laundry worker and agricultural produce sorter (Tr. 32). Accordingly, the ALJ found Siekerman is not disabled as defined by the Act (Tr. 32).

**ISSUES**

Siekerman alleges the ALJ failed to properly weigh the medical opinions and should have found she is credible. ECF No. 14 at 11. Asserting that the ALJ's findings are factually supported and free of harmful legal error, the Commissioner asks this Court to affirm. ECF No. 15 at 2.

**DISCUSSION**

*A. Credibility*

Siekerman alleges the ALJ's credibility assessment is flawed. ECF No. 14 at

12-17. The Commissioner disagrees. ECF No. 15 at 3-9.

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's credibility findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Siekerman alleges the ALJ failed to give clear and convincing reasons for finding her less than fully credible. ECF No. 14 at 12. The Court agrees this is the correct legal standard. *See Lester*, 81 F.3d 834.

The ALJ found Siekerman less than credible due to a lack of objective evidence, daily activities, lack of an objective opinion by treating or examining sources supporting the degree of symptomology and limitations alleged and agency consultants' opinions that are inconsistent with the degree of limitation alleged (Tr. 27-30). Plaintiff alleges reasons one, three and four are essentially the same, a lack of supporting objective evidence. ECF No. 14 at 12-13. Although lack of supporting

medical evidence cannot form the sole basis for discounting credibility, it is a factor the ALJ can consider when analyzing credibility. 400 F. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here it appears to be the sole basis.

*Daily activities*. The ALJ notes plaintiff reported she could walk four blocks [in October 2011]; (Tr. 26, referring to Tr. 205), whereas she testified,  in July 2013, she could only walk two blocks (Tr. 26, referring to Tr. 56-57). She reported in 2011 she could not follow directions well and was able to maintain attention for ten minutes (Tr. 26, referring to Tr. 205). Also in 2011, plaintiff reported being able to perform personal care, take care of laundry and dishes, pay bills and count change; by contrast, she testified she could not count change and had to rely on cashiers to give her the correct change (Tr. 26, 51).

According to the ALJ, plaintiff testified she lives in a fourth floor apartment and stairs are difficult, yet she climbs them at least four times a day (Tr. 27). Plaintiff testified she lives in a third floor apartment. She stops for a break at each floor before continuing up. She climbs them *at most* four times a day (Tr. 49-50). She takes breaks when doing any household chores (Tr. 58).

She uses public transportation because she does not have a driver's license. Once a month she uses a motorized cart for grocery shopping. Activities include attending weekly counseling appointments, watching television for two to three

1    hours and playing video games for an hour daily (Tr. 58-60, 62-63).

2        The Court views plaintiff's activities as consistent with allegations that she is

3    limited by physical and psychological impairments. The Commissioner alleges

4    plaintiff engages in activities "that involve public contact, such as taking public

5    transportation and attending counseling once a week," suggesting this is somehow

6    inconsistent with plaintiff's alleged impairments and limitations. ECF No. 15 at 7.

7        The Court disagrees. Plaintiff cannot be found less than credible because she

8    attends weekly counseling sessions to treat her mental impairments, nor should the

9    mode of available transportation be used to diminish her credibility. The record

10   simply does not support the ALJ's finding that Siekerman's daily activities are

11   inconsistent with allegedly disabling physical and mental limitations.

12       The ALJ considered plaintiff's "lack of compliance with treatment protocols

13   and missed appointments with vocational rehabilitation." ECF No. 15 at 7, referring

14   to Tr. 29-30, 289.  In March 2012 plaintiff reported she stopped taking medication

15   prescribed for depression, celexa. She stated when  it was prescribed a few years ago

16   "the celexa was initially somewhat helpful, but over the past few months, she found

17   that her depression got worse. She was not sure this [the celexa] was helping and

18   therefore she stopped taking it about two months ago." (Tr. 423).  After going to the

19   Department of Vocational Rehabilitation, plaintiff was eventually told to resolve her

20   issues and then return. She did not return. It does not appear her issues have

1    resolved.

2        It is true that the ALJ is entitled to review all of the evidence and to use

3    ordinary techniques of credibility evaluation, including considering behavior such as

4    unexplained or inadequately explained noncompliance with treatment as inconsistent

5    with allegedly disabling limitations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

6    1989). However, here it appears the ALJ ignored plaintiff's explanation for

7    discontinuing a medication after she took it for several years.

8        With respect to mental limitations, the ALJ also relied on "negative

9    impression management" and lack of motivation (Tr. 30). The former refers to

10   computer generated results not explained by examining Dr. Greene. His report

11   indicates the results may indicate exaggerated "complaints and problems," a cry for

12   help or an extremely negative "evaluation of oneself and one's life" (Tr. 291). The

13   report is unclear as to the reason for the results  (Tr. 291). The ALJ refers to the

14   same report as supporting plaintiff's lack of motivation, noting Dr. Greene opined

15   plaintiff was not motivated to benefit from counseling historically (Tr. 29). Whether

16   plaintiff was motivated *historically* (as described in a report dated four months prior

17   to applying for benefits)  does not show whether she was credible thereafter, nor

18   does it necessarily contradict Dr. Greene's finding that plaintiff clearly suffers from

19   significant psychological and emotional difficulties and problems and "does not

20   appear to be in control of her behaviors."  (Tr. 282, 289).

1    Significantly, the ALJ does not appear to have considered whether plaintiff's

2  illness played a role in episodic treatment for her condition.

3    The ALJ's reasons do not appear to be clear, convincing and supported by

4  substantial evidence. The ALJ's reliance on daily activities is insufficient because he

5  does not explain why the cited activities show an ability to work on a sustained,

6  consistent basis.

7    The ALJ failed to give clear and convincing reasons for his credibility

8  determination, and the reasons are unsupported by substantial evidence.

9    However, an ALJ's failure to provide sufficiently specific reasons for

10 rejecting a claimant's testimony does not, without more, require the reviewing court

11 to credit the claimant's testimony as true. *Treichler v. Commissioner of Social Sec.*

12 *Admin.*, 775 F.3d 1090 (9th Cir. 2014).

13    *B. Weighing opinion evidence*

14    Siekerman alleges the ALJ failed to properly credit Dr. Greene's opinions.

15 ECF No. 14 at 17. The Commissioner responds that the ALJ properly gave little

16 weight to Dr. Greene's contradicted check-box forms. ECF No. 15 at 10-13.

17    Dr. Greene evaluated plaintiff twice, in January and June 2011. At his first

18 evaluation, William Greene, Ph.D., administered testing. He assessed several

19 marked and moderate limitations, and gave a narrative opinion in addition to check-

20 box forms.

At Dr. Greene's second evaluation in June, he notes results again show plaintiff gave good effort on testing.  He again assessed marked and moderate limitations in employment-related activities. Dr. Greene opined plaintiff "does not appear to be in control of her behaviors" (Tr. 286-298).

The ALJ rejected Dr. Greene's opinion plaintiff suffers marked and moderate limitations as "not supported by objective findings and not consistent with treatment records that reflect only mild to moderate psychological abnormalities" (Tr. 29). The ALJ appears to refer, in part, to the opinion of another examiner, Dr. Kumar, and to reviewing agency consultants. The record does not support the ALJ's finding.

Dr. Greene's opinions are consistent with the record as a whole. Prior to applying for benefits, plaintiff was evaluated on three occasions by Paul Wert, Ph.D. (Tr. 262, 269, 278). At the first, on April 8, 1999, Dr. Wert  notes plaintiff presented "as rather under socialized."  She also appeared impulsive and as demonstrating consistently poor judgment. Results on the MMPI-2 were valid; plaintiff may have exaggerated the severity of her psychopathology to attempt to derive secondary gain; validity scores also suggest serious psychological and emotional problems with extremely weak psychological defenses and possibly a limited ability to cope with stress. Dr. Wert expressed that, "given her core emotional features, I would have some concern as to [plaintiff's] inherent ability to bond to a child or children." At

the time of this evaluation, plaintiff's daughter born in 1996 had been placed in foster care and plaintiff had only supervised visitation. He made rule out diagnoses of alcohol and polysubstance abuse and personality disorder NOS (Tr. 262-67).

Dr. Wert evaluated plaintiff a second time, in March 2003. Parental rights to her daughter born in 1996 had been terminated. Results on the MMPI-2 again showed possible exaggeration; however, Dr. Wert opined testing showed plaintiff was not very sensitive to other people's needs, and test results were "clearly troubling and disturbing." (Tr. 269-73).

At his last evaluation, in August 2004, Dr. Wert notes plaintiff now has a two year old child, born in August 2002, who lives with her. This time MMPI-2 test results were not valid. Dr. Wert opines Plaintiff may have been confused or may have exaggerated existing problems as a "cry for help." He opined "it seems clear that she has significant psychological and emotional difficulties" (Tr. 278-83).

The ALJ gave great weight to the opinion of Tushar Kumar, M.D., who examined plaintiff on one occasion, March 17, 2012 (Tr. 29, referring to Tr. 422-29). Both of plaintiff's children had been removed from her custody. Dr. Kumar assessed several mild to moderate limitations. The only record he reviewed was Dr. Greene's June 2011 evaluation and testing (Tr. 422-29).

Treating sources note moderate back pain and mild depression (Tr. 434); a history of bipolar disorder (Tr. 515); complaints of "night terrors," has been

diagnosed with PTSD, depression and anxiety; currently in counseling for an assault that happened a few years ago; feels current medications are working well (Tr. 520); complains of radiating back pain (Tr. 523); goes to the ER for back pain following physical therapy four days earlier and is diagnosed with chronic back pain, recurrence of lumbar radiculopathy; moderate "visit history for pain management issues to local ERs" is noted (Tr. 531); assessed in 2011 with a GAF of 45, indicative of serious symptoms or a serious impairment in social occupational or school functioning, appears depressed and tearful at times (Tr. 536-37); treatment goals in 2012 include addressing symptoms of depression (Tr. 548).   The ALJ did not appear to give this evidence any weight.

Instead, the ALJ relied on the opinions of agency reviewing sources.   This was error.

The ALJ's reasons for rejecting Dr. Greene's opinions are not supported by the record. Dr. Greene's opinions are much more consistent with those of Dr. Wert, who examined plaintiff three times over a five year period. Because the ALJ did not give specific and legitimate reasons supported by substantial evidence for rejecting Dr. Greene's assessed limitations, and failed to properly assess plaintiff's credibility, remand is required. Further, there is evidence plaintiff suffered substance abuse problems in the past. After the hearing, in August 2013, plaintiff reported she smokes marijuana on occasion (Tr. 288, 574).

*C. Remand*

The reviewing court disturbs the Commissioner's decision to deny benefits "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098, citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Even when the ALJ commits legal error, we uphold the decision where that error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned," even if the agency" explains its decision with less than ideal clarity," *Treichler*, 775 F.3d at 1099 (internal citations omitted).

If the reviewing court determines that the agency erred in a decision to deny benefits, and the error was not harmless, sentence four of 42 U.S.C. § 405(g) authorizes the court to reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. *See Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007).

When the record before the agency does not support the agency action, the agency has not considered all relevant factors, or the reviewing court simply cannot evaluate the challenged agency action on the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. This is known as the "ordinary 'remand' rule." *Treichler*, 775 F.3d at

1099, citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Gonzales v. Thomas*, 5547 U.S. 183, 185 (2006)(internal quotation marks omitted).     It   is within the court's discretion to remand for further proceedings or for benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).

In making this determination the court considers several factors. The first factor asks whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. The court has found the ALJ failed to give legally sufficient reasons for rejecting plaintiff's testimony and the medical opinion evidence of Dr. Greene. We next consider whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made and whether further administrative proceedings would be useful. *Treichler*, 775 F.3d at 1100-01 (citations omitted). The court finds it is unnecessary to consider the final factor.

There is a conflict in the record between the longitudinal evidence provided by Dr. Greene's two evaluations and the five years of evaluations prior to Dr. Greene's on one hand, and the sole evaluation by Dr. Kumar, on the other. The ALJ on remand may wish to consult a testifying medical expert to review the entire record in order to help resolve the conflict with respect to mental impairments. On remand, the ALJ will re-evaluate plaintiff's credibility and consider additional evidence as appropriate, including evidence of substance abuse or dependency.

## CONCLUSION

After review the Court finds the ALJ's decision is unsupported by substantial evidence and contains harmful legal error.

**IT IS ORDERED:**

Plaintiff's motion for summary judgment, **ECF No. 14**, is **granted.** The ALJ's decision is **reversed,** and the case **is remanded pursuant to sentence four**, for further administrative proceedings consistent with this opinion.

Defendant's motion for summary judgment, ECF No. 15, is denied.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of plaintiff and **CLOSE** the file.

DATED this 8th day of December, 2015.

*S/ James P. Hutton*

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE